271 So.2d 579 (1972)
Frank JOHNSON
v.
M. P. SCHNEIDER, Jr., et al.
No. 9085.
Court of Appeal of Louisiana, First Circuit.
December 26, 1972.
Rehearing Denied January 31, 1973.
*581 Joseph E. Windmeyer, New Orleans, for appellant.
John J. Weigel, New Orleans, for appellees.
Before LANDRY, TUCKER and PETERS, JJ.
LANDRY, Judge.
This appeal by plaintiff (Appellant) presents the primary issue of whether an agent may be held liable in tort to a third person for breach of a duty owed by the agent to his corporate principal who is also the employer of the injured party. Appellant, an employee of St. Joe Brick Works, Inc. (St. Joe), sued defendants (Appellees) as officers, executives, directors and agents of St. Joe, for damages allegedly sustained by Appellant due to Appellees' failure to provide Appellant a safe place in which to work. The trial court sustained Appellees' exception of no cause of action and dismissed Appellant's suit. Appellant contends the trial court erred in sustaining defendants' exceptions of no cause of action. Alternatively, Appellant maintains the trial court erred in refusing to permit amendment of Appellant's petition as provided by LSA-C.C.P. art. 934 and the jurisprudence interpreting said codal authority. We reverse and remand to the trial court with instructions regarding amendment by Appellant.
For a cause of Action, Appellant's petition relates:

"COMPLAINT FOR DAMAGES
FRANK JOHNSON, a person of the full age of majority and a resident of the City of Pearl River, Parish of St. *582 Tammany, State of Louisiana, for a cause of action does state that:

I.
M. P. SCHNEIDER, JR., C. W. SCHNEIDER, M. B. SCHNEIDER and L. M. SCHNEIDER, residents of St. Tammany Parish, State of Louisiana, are and have been owners and/or stockholders and/or officers and/or directors, and/or managing or executive officers of the St. Joe Brick Works, Inc., a corporation doing business in the Parish of St. Tammany, State of Louisiana.

II.
HAROLD LOYCANO, SR., a resident of the Parish of St. Tammany, is and has been an executive officer and/or managing agent of the St. Joe Brick Works, Inc., a corporation doing business in the Parish of St. Tammany, State of Louisiana.

III.
LIBERTY MUTUAL INSURANCE COMPANY is an insurance company which has in full force and effect a policy of general liability insurance providing coverage for the liability for the acts of the owners, stockholders, directors, officers and managing agents of the St. Joe Brick Works, Inc., and more particularly covering the acts of the aforesaid persons complained of in this action.

IV.
FRANK JOHNSON has been employed by the St. Joe Brick Works, Inc., as a brick handler.

V.
During his employment, FRANK JOHNSON has been subjected to a work environment involving large amounts of dust in a sufficient concentration and particle size to be injurious to health.

VI.
At no time during his employment was FRANK JOHNSON provided with safety equipment, breathing apparatus, proper ventilation or periodic medical examination to protect him from the harmful effects of the work atmosphere.

VII.
M. P. SCHNEIDER, JR., C. W. SCHNEIDER, M. B. SCHNEIDER and L. M. SCHNEIDER, as officers, directors, stockholders and executive officers or managing agents of St. Joe Brick Works, Inc., and HAROLD LOYCANO, SR., was an executive officer and/or managing agent of St. Joe Brick Works, Inc. knew of the dust laden atmosphere in which FRANK JOHNSON was required to work and knew or should have known of the dangers to the health of FRANK JOHNSON by working in such an atmosphere without proper protection. They further had an obligation to provide a safe work atmosphere for the employees of the said corporation and to provide adequate warnings, physical examinations, safety equipment, ventilation, and breathing apparatus to protect FRANK JOHNSON from the harmful atmosphere in which he was required to work.

VIII.
M. P. SCHNEIDER, JR., C. W. SCHNEIDER, M. B. SCHNEIDER, and L. M. SCHNEIDER, and HAROLD LOYCANO, SR., negligently failed to perform their responsibilities as set forth in Paragraph VII in the following particulars:
a. Failing to provide periodic medical examinations for Frank Johnson;
b. Failing to properly ventilate the work area in which Frank Johnson was required to work;
c. Failing to provide proper safety appliances, including, but not limited *583 to respirators, air-fed hoods, etc. for Frank Johnson's use;
d. Failure to institute safety procedures and plans for the adequate protection of Frank Johnson;
e. Failing to warn Frank Johnson of the dangerous propensities of the atmosphere in which he was compelled to work;
f. Failing to advise themselves on the scientific and engineering knowledge regarding the dangers of, and protection against, dust-laden work environments;
g. Failing to provide Frank Johnson with a safe place to work.

IX.
As a direct and proximate result of the negligence aforesaid FRANK JOHNSON has contracted advanced silicosis with massive fibrosis and active pulmonary tuberculosis secondary to the silicosis which renders him totally incapacitated.

X.
As a direct and proximate result of the negligence aforesaid and the consequent disease FRANK JOHNSON has been caused to suffer past and future loss of wages, past, present and future mental and physical pain and suffering, permanent disability, and reduced life expectancy and incur past, present, and future medical expenses all to his damage in the amount of TWO HUNDRED FIFTY THOUSAND DOLLARS AND No/100 ($250,000.00).
WHEREFORE, plaintiff FRANK JOHNSON, prays that process issue commanding defendants M. P. SCHNEIDER, JR., C. W. SCHNEIDER, M. B. SCHNEIDER, and L. M. SCHNEIDER, and HAROLD LOYCANO, SR., and the LIBERTY MUTUAL INSURANCE COMPANY, to answer each and several of the allegations made herein and that after due process being had, judgment be entered in favor of plaintiff and against defendants in the full sum of TWO HUNDRED FIFTY THOUSAND DOLLARS AND NO/100 ($250,000.00) plus costs and interest from the date of judicial demand."
In essence, the trial court concluded it could not resolve the seeming conflict and inconsistency in the jurisprudence on the issue of whether as a matter of law, an agent may become liable in tort to a third party for breach of a duty owed by the agent to the agent's principal. On this basis, the trial court reasoned the best procedure was to sustain defendants' exceptions thereby affording a final judgment from which plaintiff could appeal. This solution, according to the trial court, would result in a decision by a court of higher authority which could be used as a guide in determining the issue presented. We agree with the trial court that the rapidly increasing jurisprudence on this important issue is most perplexing.
It is elementary that in disposing of an exception of no cause of action, all well pleaded allegations of fact contained in plaintiff's petition must be taken as true. Elliott v. Dupuy, 242 La. 173, 135 So.2d 54.
We find that Appellant's petition alleges, in effect, that the named individual defendants, M. P. Schneider, Jr., C. W. Schneider, M. B. Schneider, L. M. Schneider and Harold Loycano, Sr., as owners, stockholders, officers, directors and managing agents of St. Joe, owed the corporate employees the duty of providing a safe place in which to work. The petition further charges it was Appellees' duty to provide a safe work atmosphere for the corporate employees and to furnish adequate warnings, physical examinations, safety equipment, ventilation and breathing apparata to protect the employees from the harmful atmosphere in which they were forced to work. It is also asserted that defendants *584 knew or should have known of the dangers to the health of the employees resulting from the aforesaid inimical conditions, notwithstanding which defendants did nothing to correct these circumstances, and such failure constituted the proximate cause of Appellant's injuries.
Appellees rely principally upon Maxey v. Aetna Casualty & Surety Company, 255 So.2d 120 (La.App., Third Circuit), and Dulaney v. Fruge, 257 So.2d 827 (La.App., Third Circuit). According to Appellees, Maxey and Dulaney above, hold that the duty to furnish a corporate employee a safe place in which to work is owed by the corporation, the discharge of said duty being the obligation of certain corporate executives and officers who are responsible only to the corporation alone for a breach thereof, not to the injured employee. We note other decisions to the same effect. See Daigle v. Cobb, La.App., 175 So.2d 392, and LeJeune v. Liberty Mutual Insurance Company, La.App., 261 So. 2d 280.
Appellant contends Maxey and Dulaney, above, are contrary to the majority view of our courts as expressed in numerous decisions, particularly the decision of this court in Adams v. Fidelity & Casualty Co. of New York, La.App., 107 So.2d 496. Appellant also cites and relies upon Sampson v. Schultz, La.App., 242 So.2d 363; Cacibauda v. Gaiennie, La.App., 222 So.2d 632; Berry v. Aetna Casualty & Surety Company, La.App., 240 So.2d 243; Hebert v. Blankenship, La.App., 187 So.2d 798, and numerous other authorities.
In the early case of Delaney v. Rochereau & Co., 34 La.Ann. 1123, defendant was sued in damages for a death occasioned by defendant's failure to properly maintain a house under defendant's control as paid agent of the owner. In holding that defendant was not liable, the court laid down the following rule:
"No man increases or diminishes his obligations to strangers by becoming an agent.
* * * * * *
An agent is not responsible to third persons for any negligence in the performance of duties devolving upon him purely from his agency, since he cannot, as agent, be subject to any obligations towards third persons other than those of his principal. Those duties are not imposed upon him by law. He has agreed with no one, except his principal, who alone can hold him responsible."
Following Delaney, above, there evolved a line of jurisprudence holding that a corporate officer is liable in tort to third persons for acts of malfeasance and misfeasance only, and not for acts of nonfeasance. Daigle v. Cobb, La.App., 175 So. 2d 392; Lamb Rental Tools v. Underwriters at Lloyd's London, La.App., 154 So.2d 96; Southwestern S. & M. Co. v. Industrial Molasses Corp., La.App., 135 So.2d 481; First Fed. S. & L. Ass'n v. Continental Equity L. Ins. Co., La.App., 124 So.2d 802; La Parie v. Totora, La.App., 62 So.2d 658; Wirth v. Albert, 174 La. 373, 141 So. 1.
The more recent decisions do indeed establish conflicting lines of jurisprudence with respect to whether an agent is liable under the circumstances obtaining herein. Despite the conflict, however, these later authorities do agree in some respects. All have rejected the concept of the early cases which held corporate officers liable in tort to third parties only for acts of malfeasance and misfeasance. The rationale of these cases is that if the agent has failed to perform a duty owed the injured party, it matters not whether the breach is one of commission or omission, the resultant harm is the same. See for example, Spillers v. North Assurance Co. of America, La.App., 254 So.2d 125; Sampson v. Schultz, La.App., 242 So.2d 363; Berry v. Aetna Casualty & Surety Company, La.App., 240 So.2d 243; Ellender v. Sabel, La.App., 175 So.2d 714; Adams v. Fidelity & Casualty Co. of New York, La.App., 107 So.2d 496; Washington v. T. Smith & Son, La.App., 68 So.2d 337. The cases are also in agreement that if a duty is owed exclusively to *585 a corporation, breach thereof cannot give rise to an action in tort in favor of an injured third party. Spillers, supra; Maxey v. Aetna Casualty & Surety Company, supra; Adams, supra. Lastly, the authorities are unanimous to the effect that a corporate officer owes to a third person the same duty he owes to any other person, namely, the obligation not to injure another by his negligence. Maxey, supra; Adams, supra.
The duty of an employer to furnish his employees a safe place in which to work is expressly imposed by LSA-R.S. 23:13, which reads as follows:
"Every employer shall furnish employment which shall be reasonably safe for the employees therein. They shall furnish and use safety devices and safeguards, shall adopt and use methods and processes reasonably adequate to render such employment and the place of employment safe in accordance with the accepted and approved practice in such or similar industry or places of employment considering the normal hazard of such employment, and shall do every other thing reasonably necessary to protect the life, health, safety and welfare of such employees. Nothing in this Section shall apply to employment in private domestic service or to agricultural field occupations."
We are in accord with Chaney v. Brupbacher, La.App., 242 So.2d 627, and Chabina v. Travelers Insurance Co., La. App., 251 So.2d 414, which held that, under appropriate circumstances and within the limits of his authority, a corporate director, executive, officer or agent can become directly obligated to furnish employees a safe place in which to work.
The question which has continually perplexed the court is under what circumstances does the employer's obligation in this respect become an obligation owed by an officer, director, executive or agent directly to the employer's employees?
Upon researching the issue, we find only one case in our own jurisprudence which has attempted to formulate a legal concept for the proposition that a duty ordinarily owed by a corporate officer, director, stockholder or agent to the corporation alone, may also become an obligation owed directly to third persons, namely, corporate employees. We refer to Spillers v. Northern Assurance Co. of America, La.App., 254 So.2d 125, which quotes from Malone & Guerry, Studies in Louisiana Torts Law, page 524, as follows:
"In considering the Adams decision it should be borne in mind that the agent should not be held responsible to a third person for his mere failure to perform an affirmative duty toward his principal unless (a) the principal owed a duty of care toward the third person, and (b) this same duty was delegated to the agent, who undertook its performance. When both these conditions have been met it will be found that the agent, by failing to perform his duty, has deprived the third person of the protection to which the latter was entitled and which, presumably, he would have received from the principal if the agent had not undertaken its performance. Under these circumstances the failure of the agent serves as a positive interference with the third person's right to reasonable protection by the principal, and his negligence becomes something more than nonfeasance.
But the converse is also true. When the principal is not encumbered with any duty toward the third person or, even if he is so encumbered, he has not delegated its performance to the agent, there is no reason why mere nonfeasance by the agent should result in his liability."
Spillers, above, points out that Restatement, Agency, Second Edition, 1958, Section 354, has adopted the rule which imposes upon an agent the duty of care toward a third person when the agent's failure to exercise due care deprives the third party *586 of some protection owed the third party by the principal. We deem this premise legally sound. We also find that this principle accords with the clear majority of jurisdictions as evidenced by the numerous authorities cited in Malone, Duty of Agent to Third Parties, 26 La.L.Rev. 526.
Therefore, we find the operative factors giving rise to the duty toward a third person in instances of this nature are: (1) the existence of a duty on the part of the principal toward the third party; (2) delegation of that duty to an agent such as a corporate officer, director, stockholder or employee, and (3) acceptance of the delegated duty by the agent and the agent's undertaking the performance thereof as part of the agent's duties to his principal. When these factors co-exist, the agent assumes and incurs an obligation or duty to the third party. The breach of the duty thus incurred subjects the agent to liability in tort to the third party thereby injured.
Appellees have suggested that actual knowledge of the dangerous circumstances is a condition precedent to the agent's duty to a third party. We think, however, that the presence or absence of knowledge addresses itself solely to the question of whether the agent has fulfilled the duty of care imposed upon him, and has no bearing upon the issue of whether the duty exists. Once the agent's responsibility has been established by application of the hereinabove stated principle, then and then only does the question of knowledge become pertinent.
Obviously, the question of liability resulting from an alleged breach of such an assumed duty must be determined in the light of the facts and circumstances of each particular case. It would seem that, as a general rule, delegation of the principal's duty to the agent will occur in the form of an employment contract or agreement delineating the agent's duties and responsibilities. Once the agent undertakes performance of the delegated duties, it is incumbent upon him to discharge the obligation with that degree of care required of an ordinarily reasonably prudent person under the same or similar circumstances. Within the scope of the undertaken duty, the agent must exercise ordinary care commensurate therewith under the circumstances. Failure to exercise such care, whether from malfeasance, misfeasance or nonfeasance, renders the agent liable in tort to the third party for those injuries which are the reasonably foreseeable results thereof. Stated otherwise, the agent is responsible when he either saw or should have seen that his negligent performance or failure to perform his duties would cause the kind of damage which ensued to the class of persons in which the injured party is included.
We are cognizant of the circumstance that, in general, especially in the case of large corporations, the employer's duty to provide a safe place to work is normally delegated along a chain of command. A superior who delegates such an obligation to a competent and qualified subordinate thereby avoids liability for breach of the duty except in those instances where the superior knew or, by the exercise of reasonable care, should have known of the breach by the subordinate and failed to act within a reasonable time under the circumstances.
We deem this rule reasonable in that it avoids imposition of vicarious liability upon supervisory personnel merely by virtue of their employment. At the same time, it imposes liability upon an agent who negligently creates or negligently fails to correct a dangerous working condition of which he was actually aware or of which he should have reasonably been aware under the circumstances.
Applying the foregoing rules to the case at hand, we find that Appellant's petition fails to state a cause of action. The principal deficiency lies in the failure *587 to allege that the corporate employer owed Appellant the duty of providing safe working conditions; that this duty was delegated to Appellees, and Appellees undertook performance thereof as part of the duties owed by Appellees to the corporation.
We do, however, find merit in Appellant's alternative contention that the lower court erroneously denied Appellant's request for permission to amend Appellant's petition.
LSA-C.C.P. art. 934 provides that when the grounds of objection pleaded by a peremptory exception may be cured by amendment, the judgment sustaining the exception shall order such an amendment within a delay to be fixed by the court.
In commenting upon Article 934, above, the Supreme Court, in Hayes v. Muller, 248 La. 934, 183 So.2d 310, made the following pertinent observation:
"It is seen that the foregoing article is merely declaratory of the appropriate action to be taken by the district court in disposing of cases on peremptory exceptions. In cases where the peremptory exception is sustained by reason of insufficiency of allegations, the judge should permit an amendment to the petition whenever possible. Conversely, if the objection to the petition . . . cannot be removed, the judge is obliged. . . to dismiss the action."
We find the grounds of objection tendered by Appellees' peremptory exception could have been removed by amendment of Appellant's petition and that Appellant's request for permission to amend should have been granted.
It is ordered, adjudged and decreed that the judgment of the trial court dismissing Appellant's petition on Appellees' exception of no cause of action, be and the same is hereby reversed and set aside and this matter remanded to the trial court.
It is further ordered, adjudged and decreed that Appellant be granted 20 days from the effective date of this remand to the trial court, in which to amend his petition, whereupon this matter shall proceed in the trial court, and in the event of Appellant's failure to amend within the time stipulated, Appellant's action shall ipso facto be dismissed with prejudice; all costs of this appeal to be paid by Appellees.
Reversed and remanded.